In a proceeding pursuant to SCPA 1001 to obtain letters of administration for the estate of Anthony Frank Fizzinoglia, also known as Anthony F. Fizzinoglia, also known as Anthony Fizzinoglia, the petitioner appeals from a decree of the Surrogate’s Court, Putnam County (Reitz, S.), dated August 10, 2012, which, upon an order of the same court dated March 2, 2012, denying her motion for summary judgment, in effect, *995 determining that a certain prenuptial agreement was invalid, after a nonjury trial, and upon an order of the same court dated July 26, 2012, denying her motion to amend the pleadings to conform to the proof and granting the objectant’s motion pursuant to CPLR 4401, made at the close of her case, for judgment as a matter of law, inter alia, in effect, determined that the prenuptial agreement between her and the decedent was valid, dismissed the petition, and revoked temporary letters of administration that had been issued to her.
Ordered that the decree is affirmed, with costs payable by the appellant personally.
Upon the death of Anthony Frank Fizzinoglia, also known as Anthony F. Fizzinoglia, also known as Anthony Fizzinoglia (hereinafter the decedent), the petitioner commenced this proceeding pursuant to SCPA 1001 to obtain letters of administration for the estate of the decedent on the ground that she was the surviving spouse, and to invalidate a prenuptial agreement under which, among other provisions, she waived her right to elect an intestate share of the decedent’s estate. Frank Fizzinoglia, the objectant, appearing individually and as executor of the estate of the decedent’s mother, is the decedent’s father. The objectant alleged, inter alia, that the prenuptial agreement disqualified the petitioner as a distributee of the decedent’s estate.
In general, New York has a “strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements, including prenuptial agreements” (Matter of Greiff, 92 NY2d 341, 344 [1998]; see Bloomfield v Bloomfield, 97 NY2d 188, 193 [2001]; Cioffi-Petrakis v Petrakis, 103 AD3d 766, 767 [2013]). “However, this right is not and has never been without limitation” (Kessler v Kessler, 33 AD3d 42, 45 [2006]). “Thus, while There is a heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties’ (Brassey v Brassey, 154 AD2d 293, 295 [1989]), an agreement between spouses or prospective spouses may be invalidated if the party challenging the agreement demonstrates that it was the product of fraud, duress, or other inequitable conduct” (Cioffi-Petrakis v Petrakis, 103 AD3d at 767; see Christian v Christian, 42 NY2d 63, 73 [1977]; Petracca v Petracca, 101 AD3d 695 [2012]; Weinstein v Weinstein, 36 AD3d 797, 798 [2007]; Lombardi v Lombardi, 235 AD2d 400 [1997]).
Contrary to the petitioner’s contention, the Surrogate’s Court properly denied her motion for summary judgment, in effect, determining that the prenuptial agreement was invalid and *996 unenforceable on the grounds that an essential term was omitted from the agreement and the agreement was procured through overreaching. Notably, an addendum to the signed prenuptial agreement, labeled “Exhibit A,” in which the parties were supposed to set forth their assets and liabilities, was left blank. However, “[a] failure to disclose financial matters, by itself, is not sufficient to vitiate a prenuptial agreement” (Strong v Dubin, 48 AD3d 232, 233 [2008]; see Pulver v Pulver, 40 AD3d 1315, 1317-1318 [2007]; Panossian v Panossian, 172 AD2d 811 [1991]; Eckstein v Eckstein, 129 AD2d 552, 553 [1987]). The petitioner testified at her deposition that she was aware when signing the agreement that “Exhibit A” was blank, but she was not concerned by that omission, and that the decedent’s financial status had made no difference to her before the marriage. Further, the record indicates that the petitioner was personally acquainted with the nature of the decedent’s assets before signing the agreement, and there was no indication that the decedent had at any time attempted to conceal or misrepresent the nature or extent of his assets. Since the petitioner failed to make a prima facie showing of her entitlement to judgment as a matter of law determining that the prenuptial agreement was invalid and unenforceable, her motion was properly denied regardless of the sufficiency of the objectant’s opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
Moreover, the Surrogate’s Court properly granted the objectant’s motion pursuant to CPLR 4401, made at the conclusion of the petitioner’s case, for judgment as a matter of law, as there was no rational process by which the trier of fact could base a finding in favor of the petitioner (see generally Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]; PAS Tech. Servs., Inc. v Middle Vil. Healthcare Mgt., LLC, 92 AD3d 742 [2012]). The petitioner failed to establish any fact-based particularized inequality with the decedent so as to shift the burden to the objectant to disprove fraud or overreaching (see Matter of Greiff, 92 NY2d at 346; Petracca v Petracca, 101 AD3d at 698). Thus, it remained the petitioner’s burden on her case-in-chief to establish that her execution of the prenuptial agreement was procured through fraud, duress, or other inequitable conduct (see Cioffi-Petrakis v Petrakis, 103 AD3d at 767). Contrary to the petitioner’s contentions, the record is devoid of any evidence of coercion or undue influence exercised on the part of the decedent, the objectant, or their accountant, who were all present at the execution. Moreover, the petitioner did not show that the agreement itself was unconscionable or was the product of overreaching.
The petitioner’s remaining contentions are without merit.
Dillon, J.R, Dickerson, Cohen and Duffy, JJ., concur.